**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **STEPHEN E. JOHNSON** ) | **CASE NO. 1:12CV1505** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **WORKING AMERICA, INC.,** ) | |
| ) | |
| **Defendant.** ) | **REPORT AND RECOMMENDATION** |

On August 1, 2012, this matter was referred pursuant to Local Rule 72.1 for pretrial supervision to include recommendations on dispositive motions. (Doc. No. 7.) Pending before the Court is Defendant's Motion to Dismiss counts three and four of the First Amended Complaint. (Doc. No. 12.) Plaintiff filed an opposition brief to which Defendant replied. (Doc. Nos. 16, 20.) Also pending is Plaintiff's motion requesting authority to file electronically. (Doc. No. 22.) For the following reasons, the Court recommends that Defendant's Motion to Dismiss be denied.

**I. Procedural Background**

On July 20, 2012, Plaintiff Stephen E. Johnson ("Johnson") filed a First Amended Complaint[1] claiming employment discrimination based on race and sex under Title VII and the Fifth and Fourteenth Amendments, and unlawful fraud and false statements under 18 U.S.C. § 1038. Johnson also raises state law claims of libel and breach of contract. (Doc. No. 4.) On July 30, 2012, the Court, *sua sponte*, dismissed Johnson's claims arising under 18 U.S.C. § 1038 and the Fifth and Fourteenth Amendments pursuant to 28 U.S.C. § 1915(e), allowing the remaining Title VII and state law claims to proceed. (Doc. No. 5 at 6.)

---

[1] Johnson's initial complaint, filed on June 13, 2012, is a nullity, because "an amended complaint supercedes all prior complaints." *See B&H Medical LLC v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008).

## II. Factual Background

The Court set forth the facts from Johnson's First Amended Complaint as follows:

Mr. Johnson, who describes himself as a Moorish American citizen, was initially interviewed for a position with Working America on February 3, 2011. A second interview followed on February 16, 2011, at which time he was invited to orientation the following day as a canvass organizer. After orientation, Mr. Johnson alleges he was praised for his performance and highly recommended for hire as a field canvass organizer.

On or about March 7, 2011, Working America hired Mr. Johnson.[2] One week later, the Field Director for the Cleveland Office telephone him to advise that his training was over and that he was terminated for failing to meet his quota. In person, the Director explained that Mr. Johnson did not sign up a sufficient number of members. Mr. Johnson countered that he had met the quota defined in the contract agreement on three of the five days he worked.

Mr. Johnson alleges he performed all the duties required for his position, above and beyond the terms in the contract. He complains that Working America failed to follow its "five step procedure" prior to terminating his employment. Moreover, he alleges he was subjected to disparate treatment compared to Caucasian employees hired by Working America who failed to meet their quota, but were not fired.

Although he alleges Working America's policy required the rotation of new partners every day, Mr. Johnson claims he was paired with an African American co-worker for three-consecutive days. During this time, the two were required to solicit membership in territories with abandoned buildings, few residences and drug activity. He alleges these territories were inferior to those in which Caucasian employees were assigned to canvas. Mr. Johnson adds that on the same date he missed his quota and was fired, a Caucasian female missed her quota and her employment with Working America was not terminated.[fn2]

[fn2] A copy of the Notice of Suit Rights that Mr. Johnson received from the Equal Employment Opportunity Commission (E.E.O.C.) is attached to the Complaint.

(Doc. No. 5 at 2-3.)

## III. Standard of Review

To determine whether a complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to

---

[2]Johnson's First Amended Complaint actually states that March 7, 2011, was when he began his "official week." The Field Canvass Agreement that Johnson attached to his brief in opposition seems to indicate his date of hire was February 14, 2011. (Doc. Nos 16-3-16-4.)

state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).[3]

Although the Court has some discretion to consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," the Court's Rule 12(b)(6) decision must "primarily consider [ ] the allegations in the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (*quoting Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted); *see also Passa v. City of Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005) (stating that "a court generally may not consider any facts outside the complaint and exhibits attached thereto" in ruling on a motion to dismiss). The Court may consider attachments to the motion to dismiss as part of the pleadings if such attachments are referred to in the complaint and are a central part of the claim. *Amini*, 259 F.3d at 502. Under Rule 12(b)(6), the Court may refer only to matters outside the pleadings to "fill [ ] in the contours and details of the plaintiff's complaint" and may not base its rationale on "the additional information provided there." *Yearly v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

Moreover, it is well-settled that "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief." *Id*.

### IV. Analysis

**A. Defamation (Libel or slander)**

Defendant contends that Johnson's libel claim must be dismissed as any relevant

---

[3]Defendant does not challenge on plausibility grounds.

statements would have been made to a governmental agency and are protected by absolute privilege. (Doc. No. 12-1 at 2-3.) Johnson asserts that his libel claim is based upon "verbal broadcast to employees," not statements made to government agencies. (Doc. No. 16-1 at 1.) Defendant counters that a "verbal broadcast" is not libel, but instead slander and, no matter which type of defamation is alleged, this action was not commenced within Ohio's one year statute of limitations. (Doc. No. 20 at 2.)

In Johnson's First Amended Complaint, he alleges in count 3 (libel) the following:

> Knowingly to verbally broadcast to employees and publish false hood [sic] statements to damage reputation about Plaintiffs, Character. [sic] Defendant gave misleading information to another agency in writing stating that Stephen E. Johnson missed quota and had been told to other employee's. [sic]

First Am. Compl. ¶ 14.

To state a claim under Ohio law for defamation, a plaintiff must show that there was: 1) a false statement, 2) defamatory to the plaintiff, 3) published to a third party, 4) by a defendant who was, at a minimum, negligent, and 5) damaging to the plaintiff's reputation. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 312 (6th Cir. 2000) (*citing Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979, 984 (1987)). A plaintiff must prove a defendant's negligence by clear and convincing evidence, but need only prove the other elements by a preponderance of the evidence. *See Lansdowne* at 984. In a defamation action, falsity is an essential element. *See Bruss v. Vindicator Printing Co.*, 109 Ohio App.3d 396, 672 N.E.2d 238, 240 (1996). Furthermore, in defending against a defamation action, it is sufficient for the defendant to show that "the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation." *National Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 573 N.E.2d 1148, 1150 (1989).

Privilege, absolute or qualified, is a defense to defamation claims. *Parry*, 236 F.3d at 313. Under Ohio law, statements made to the EEOC are absolutely privileged, and therefore may not form the basis for a defamation suit. *See Kettering v. Diamond-Triumph Auto Glass, Inc.*, 24 Fed. App'x 352, 357-358 (6th Cir. 2001) (*citing Saini v. Cleveland Pneumatic Co.*, 1987 WL 11098, at *4 (Ohio Ct. App. May 14, 1978)). Further, Ohio law provides that an action for

libel or slander shall be commenced within one year after the cause of action accrued. Ohio Revised Code ("O.R.C.") § 2305.11(A).

In the First Amended Complaint, Johnson contends that Working America submitted written misleading statements regarding missed quotas to another agency, as well as to other employees. Any alleged defamatory statements made to the agency (Defendant presumes to be the EEOC) may be privileged. Johnson also alleges that Working America made defamatory statements to employees. Johnson has not, however, set forth the dates such statements were made. If the statements were made on or before March 14, 2011, his last date of employment with Defendant, this claim would be barred as Johnson did not file his first complaint until June 13, 2012. *See* O.R.C. § 2305.11(A). If defamatory statements were made after June 13, 2011, the claim would not be barred. As a *pro se* litigant, Johnson is entitled to "liberal construction" of his complaint, especially at the early stage of the litigation. Therefore, the Court recommends that Defendant's motion to dismiss be denied as to Count Three. Discovery will be required to establish the exact dates Johnson claims he was defamed.

### B. Breach of Contract

Johnson alleges that his employment contract was breached by Working America when it terminated him based on missed quotas. (Doc. No. 4 at 5.) Johnson further contends that his employment was terminated without complying with a five-step procedure Defendant agreed to follow. (Doc. No. 4 at 2.) Working America responds that Johnson's breach of contract claim is preempted by the Labor Management Relations Act ("LMRA"), Section 301 ("§ 301"), codified at 29 U.S.C. § 185. Moreover, Working America asserts that Johnson failed to allege that the union breached its duty of fair representation and that any such claim pursuant to § 301 is barred by the relevant statute of limitations.

Johnson's count four of the First Amended Complaint raises a breach of contract claim as follows:

> Plaintiff, Stephen E. Johnson has met his requirements above quota in the first week of employment based on contract details from defendant. Defendant insisted that Plaintiff did not due to delays and mistake of contract, although Plaintiff and several other employees signed the same contract, defendants have refused to honor Plaintiffs [sic] request.

5

(Doc. No. 4 at 5.)

Working America asserts that the terms and conditions of employment for all non-managerial canvass staff, including Johnson, are governed by a Collective Bargaining Agreement ("CBA") with the Office and Professional Employees International Union, Local 2, AFL-CIO (Attachment A to Defendant's Motion to Dismiss).  (Doc. No. 12-2.)  Johnson responds that he was never in a union and that he met the quota assignments he was given.  (Doc. No. 16-1 at 2.)  He attached two exhibits in support.  Exhibit A is Johnson's signed statement dated February 17, 2011, acknowledging that he qualified for a second interview at which time he was observed while performing the duties of a canvasser.  (Doc. No. 16-2.)  Exhibit B is a Field Canvass Agreement, effective February 14, 2011, executed by Johnson on February 17, 2011.  (Doc. No. 16-3.)  This Agreement indicates that Johnson was employed as a Canvasser and expected to meet minimum standards during training.[4]  (Doc. No. 16-4.)

Working America submits that the Court should consider the CBA at this stage of the proceeding because when Johnson signed the Field Canvass Agreement he acknowledged that a copy of the Field Canvass Policies and Procedures was made available to him and he accepted responsibility to review and follow it.  The latter, a 36-page document, attached as Exhibit One to Working America's reply memorandum, contains a reference on page two that the terms of employment for Canvassers include being covered by the CBA.  First, considering the CBA, two-steps removed from the Field Canvassing Agreement, seems to be a stretch at best, and beyond "the contours and details of the plaintiff's complaint."  *See Yearly*, 107 F.3d at 445.  Secondly, Johnson appears to claim the CBA was not part of his employment contract.  Working America claims, through counsel, to the contrary.  This factual dispute is central to the determination whether preemption under § 301 applies.  Discovery will be required to determine whether Johnson was indeed a member of the union or otherwise covered by the CBA.

---

[4]The Agreement notes that during the first week of training, a canvasser is expected to sign up fifteen member households on three days of that week and raise at least $40; during week two, sign up seventeen member households during three days and raise at least $50; and, during the third week, sign up twenty member households and raise at least $60.  (Doc. No. 16-4.)

The Court recommends that Defendant's motion to dismiss be denied.

### V. Plaintiff's Motion to File Electronic (Doc. No. 22.)

On October 12, 2012, Johnson filed a motion requesting the Court to allow him to file electronically.  (Doc. No. 22.)

Local Rule 5.1(c) states in pertinent part, as follows:

> While parties and pro se litigants may register to receive "read only" electronic filing accounts so that they may access documents in the system and receive electronic notice, typically only registered attorneys, as Officers of the Court, will be permitted to file electronically.  The Judicial Officer may, at his or her discretion, grant a pro se litigant who demonstrates a willingness and capability to file documents electronically permission to do so.

It is this District's preferred policy, however, to disallow *pro se* litigants access to electronic filing unless extenuating circumstances exist to justify waiving these procedures.  Johnson has not provided the Court with such circumstances.  The Court, therefore, denies the requested authority.

### VI. Conclusion

For the above-stated reasons, the Court hereby orders that Johnson's motion to file electronically be denied.  (Doc. No. 22.)  Furthermore, the Court recommends that Defendant's Motion to Dismiss counts three and four of the First Amended Complaint be denied.  (Doc. No. 12.)

                                                                          s/ Greg White
                                                                   United States Magistrate Judge

Date:   November 1, 2012

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**